UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of | Case No. 22 Misc._____ |
| JSC "INGTORGSTROY", | |
| For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | |

### DECLARATION OF ALEXANDRA FILIPPOVA IN SUPPORT OF *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

I, the undersigned, Alexandra Filippova, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

1.     I am over the age of 18 and the facts set forth herein are based on my own personal knowledge or from information provided to me by others. Where facts are within my personal knowledge, I can affirm that they are true. Where the information is provided to me by others, I state the source of my knowledge and affirm it is true to the best of my information and belief.

2.     I am an in-house counsel for JSC "INGTORGSTROY" ("**Applicant**"). I am qualified under Russian law and have over four (4) years of experience in domestic and cross-border litigation.

3.     I submit this Declaration in support of Applicant's application for an Order, pursuant to 28 U.S.C. § 1782, authorizing intermediary bank discovery in connection with pending proceedings before the commercial court of Zabaykalsky Region, Russia ("**Court of Zabaykalsky Region**") against former CEOs and beneficial owners of OJSC "GK Amazarkan" ("**Debtor**"); contemplated proceedings before the commercial court of Moscow city, Russia ("**Court of Moscow City**") against Pavel Entin; and contemplated proceedings before the

commercial court of Kaluga Region, Russia ("**Court of Kaluga Region**") against Bogdan Solodukha.

## I.      FACTUAL BACKGROUND

### The Underlying Debt

4.      OJSC "GK Amazarkan" ("**Debtor**") was a Russian mining company established to develop a gold field in the Zabaykalsky Region, Russia ("**Gold Field**"). The Debtor's license to exploit the Gold Field expired at the end of 2017.

5.      Between 2007 and 2011, PJSC "URALSIB BANK"[1] ("**Bank**") and the Debtor entered into several credit facility agreements, under which the Bank provided the Debtor with USD 58,4 million for the development of the Gold Field (the "**Credit Facilities**").

6.      In 2011, in order to secure the Credit Facilities, the Debtor's beneficial owners Pavel Entin (**"Mr. Entin"**) and Bogdan Solodukha (**"Mr. Solodukha"**) granted the Bank personal guarantees over repayment of the Credit Facilities (hereinafter collectively referred to as the "**Guarantors**"). As early as mid-2012, it appears that the Debtor ceased exploiting the Gold Field completely. The Debtor's flow of revenues dried up, leading the Bank and the Debtor to make several debt restructuring agreements in 2012 and 2013. Unfortunately, these debt restructuring agreements did not salvage the Debtor's business.

### The Underlying Bankruptcy Proceedings

7.      In April 2016, the Debtor entered into bankruptcy proceedings[2] under the auspices of the Court of Zabaykalsky Region (the "**Debtor's Bankruptcy Proceedings**") (**Exhibit 1**).

---

[1] URALSIB BANK is one of the largest privately owned banks in Russia, operating throughout the country with headquarters in Moscow.

[2] The supervision is a provisional stage of bankruptcy proceedings in Russia. Once supervision is introduced, a temporary manager (bankruptcy trustee) is appointed to oversee the activities of the debtor. Such manager supervises the management bodies of the debtor, which remain in place. Supervision aims to (i) preserve the debtor's property; (ii) analyse its financial state; (iii) complete a creditors' register; and (iv) hold the first creditors' meeting.

8.      In March 2017, the Court of Zabaykalsky Region declared the Debtor bankrupt, and commenced the liquidation of the Debtor's assets[3] (**Exhibit 2**). The liquidation is ongoing.

9.      In March 2018, the Court of Zabaykalsky Region registered the debt owed by the Debtor to the Bank in the Debtor's "creditors' register", and established the Bank's claim as amounting to RUB 1,437,646,195.72 (USD 17,235,959.32 ) ("**Debt**") (**Exhibit 3**).

10.     Due to the Debtor's default and the Bank's inability to recover the Debt, the Bank sought to enforce the personal guarantees of the Debt granted by the Guarantors.

11.     In 2017, the Court of Moscow City and the Court of Kaluga Region declared the Guarantors bankrupt, and the Debt was registered in their "creditors' registers" in favor of the Bank (**Exhibits 4**).

12.     In 2019, the Court of Moscow City and the Court of Kaluga Region terminated the Guarantors' bankruptcy proceedings, and released the Guarantors from the Debt in accordance with Russian law (**Exhibits 5**).

13.     On June 16, 2021, the Court of Zabaykalsky Region ruled that Applicant is the legal successor of the Bank as to its claims in the debt, including against the guarantors. (**Exhibit 6**).

14.     Applicant is therefore the Debtor's major creditor, holding approx. 83 % of its creditors' register.

**Investigations**

15.     At the onset of the Debtor's Bankruptcy Proceedings, it became evident that the Debtor's assets are not sufficient even to cover 2% of Applicant's Debt.

---

3 The liquidation stage of bankruptcy proceedings is designed to satisfy creditors' claims through the sale of the debtor's assets.

3

16. Before assigning the Debt[4] to Applicant, the Bank had managed to recover only about RUB 20 million (or USD 239,780.27)[5] of its debt.

17. This appears to be an important indication that the funds lent by the Bank through the Credit Facilities were not actually used to develop the Gold Field. Indeed, had the Debtor exploited the Gold Field, the Debtor would have had more assets, provisions, and stocks, including drilling equipment and trucks. Plus, the Bank's representatives' inspections of the Gold Field in recent years have revealed that there is no sign of production infrastructures as should have allowed the funds allocated for purposes of exploiting the Gold Field under the Credit Facilities.

18. In fact, it appears from Applicant's investigations that the Debtor may have deliberately overestimated the Gold Field's gold content, for the purpose of obtaining credit facilities from the Bank.

19. According to investigations conducted by the Bank and the Applicant, the Debtor did not use the funds lent by the Bank to the Debtor under the Credit Facilities to develop the Gold Field, but rather funneled those funds out of the Debtor, and to its beneficial owners.

20. Applicant's investigations reveal that following individuals are believed to be the beneficial owners of the Debtor (hereinafter collectively as "**Beneficial Owners**"):

> (i) Dmitry Glukhov holding 75,001% of the Debtor's shares through PAVITAR MANAGEMENT LTD (Cyprus);
>
> (ii) Bogdan Solodukha holding 11,874525% of the Debtor's shares through BACLIFF INVESTMENTS LTD (Cyprus; 7,999% of direct ownership in

---

[4] The debt was partially assigned: 85% of the debt was assigned to Applicant. And approximately RUB 200 Million (or 15 % of all creditors' claims) are still in possession of the Bank.

[5] Exchange rate or Russian Central Bank (RUB to US$) 83,4097:1 as of April 1, 2022 (i.e, execution date of this Declaration)

4

the Debtor's capital) and KREBS TRADING LTD (Cyprus; 17% of direct ownership in the Debtor's capital);

(iii)     Pavel Entin (Semenyuta)[6] holding 11,874525% of the Debtor's shares through through BACLIFF INVESTMENTS LTD (Cyprus; 7,999% of direct ownership in the Debtor's capital) and KREBS TRADING LTD (Cyprus; 17% of direct ownership in the Debtor's capital);

(iv)     Nataliya Solodkova holding 1,24995% shares through BACLIFF INVESTMENTS LTD (Cyprus; 7,999% of direct ownership in the Debtor's capital) and KREBS TRADING LTD (Cyprus; 17% of direct ownership in the Debtor's capital).

21.     It is important to note that only RUB 4,610,508.12 (USD 55,275.44) were recovered by the Bank in the liquidation of Mr. Entin's assets. However, Mr. Entin is now living in Australia with his family, and has started a new business. It is unclear what funds Mr. Entin used to move to Australia.

22.     Similarly, Applicant has not recovered even a dime in the bankruptcy proceedings of Mr. Solodukha.

23.     Such a result is suspicious considering that the Guarantors were prominent businessmen. De-facto, the Court of Moscow City and the Court of Kaluga Region found that the Guarantors do not have assets at all. Instead, Applicant's investigation reasonably suggests that the Guarantors managed to transfer and conceal their assets in foreign jurisdictions by virtue of using various offshore corporate structures and nominees, in order to avoid repayment of the Debt.

---

[6] In 2014, Pavel Semenyuta changed his surname to Entin.

24.     Relying on the 145-page report from a court appointed independent auditor, the newly appointed liquidator in the Debtor's Bankruptcy Proceedings concluded that there is a link between offshore companies that the Guarantors control and the money funneled out of the Debtor.

25.     Likewise, Applicant's investigation has revealed that the Beneficial Owners are likely to have cause the Debtor's assets to be syphoned off in breach of the Credit Facilities, which ultimately led to the Debtor's bankruptcy and harmed Applicant.

26.     Applicant has identified close family members of the Beneficial Owners who Applicant reasonably believes have been used as the Beneficial Owners' or Debtor's nominees in order to conceal their assets, and / or have improperly received funds by them in priority over Applicant (herein after collectively referred to as the "**Related Persons**"), namely:

1) The spouse and trustee of Beneficial Owner Dmitry Glukhov, Yulia V. Lezhen—she is the nominee owner of Glukhov's business structures in Cyprus, Netherlands and other countries, and the Russian corporate domain of a company directly owned by Glukhov is registered in her name;

2) A daughter of Beneficial Owner Dmitry Glukhov, Ekaterina D. Glukhova, who holds Dmitry Glukhov's Russian assets;

3) The spouse and trustee of Beneficial Owner Pavel Entin, Tamara Entina (Semenyuta)--she was the nominee owner of Pavel Entin's Australian business during his personal bankruptcy;

4) The former spouse of Beneficial Owner Bogdan Solodukha, Tatiana Solodukha, who registered their USD 2 million worth apartment in her

mother's name and later in her name after their divorce. During their marriage, that apartment was held by a nominee.

5) Bogdan Solodukha's mother-in-law, Zinaida Marchenko, who held Solodukha's apartment for a certain period after he divorced Tatiana Solodukho, while she resided in a different town and held that property in the interests of Bogdan Solodukha and his family;

6) Bogdan Solodukha's brother, Andrey Solodukha, who is related to an entity part of the Debtor's corporate structure, Lakeshore International Management Inc (Switzerland).

7) Sergey Bychkov, a member of the Debtor's board of directors and long standing business partner of Beneficial Owner Bogdan Solodukha;

8) Renat Aygistov, who held expensive property in the interests of Beneficial Owner Bogdan Solodukha;

9) PAVITAR MANAGEMENT LIMITED, a majority co-owner of the Debtor. The company is known to have been owned and controlled by Dmitry Glukhov via the BVI-registered company BUNDY INTERNATIONAL LIMITED;

10) BUNDY INTERNATIONAL LIMITED – a BVI-registered company that owned PAVITAR MANAGEMENT LIMITED, a majority owner of the Debtor since 2011, and is understood to be beneficially owned by Beneficial Owner Dmitry Glukhov;

11) CRANSSETA INVESTMENTS LTD (**"Cransseta"**), a company owned and directed by Ms. Yulia Lezhen, partner and trustee of Beneficial Owner Dmitry

Glukhov. The company is active in the sphere of solar energy investment, which is one of primary lines of Dmitry Glukhov's business interests, and is understood to be the main holding company of Dmitry Glukhov's foreign assets and companies. Additionally, the company's address is the same as other Russian holding companies that are directly owned by Dmitry Glukhov;

12) PHOTOVOLT DEVELOPMENT PARTNERS GmbH, a company managed by Yulia Lezhen and owned by Cransseta. The company is also active in the sphere of solar energy development, which is one of primary lines of Dmitry Glukhov's business interests;

13) SOLARFIVE LTD, a UK company that was owned by Cransseta, before being transferred to Yulia Lezhen and then to Peter Gerstmann. The company is also managed by Peter Gerstmann, who also manages other companies of Dmitry Glukhov;

14) SOLARONE LTD, a company wholly owned by Cransseta, which is managed and held by Yulia Lezhen and Peter Gerstmann;

15) SOLARTHREE LTD, a company wholly owned by Cransseta, which is managed and held by Yulia Lezhen and Peter Gerstmann;

16) SOLARFOUR LTD, a company wholly owned by Cransseta, which is managed and held by Yulia Lezhen and Peter Gerstmann;

17) SOLARSEVEN LTD, a company wholly owned by Cransseta, which is managed and held by Yulia Lezhen and Peter Gerstmann;

18) JBG POWER GmbH, a company managed by Yulia Lezhen. The company is active in the sphere of solar energy development, which is one of Dmitry Glukhov's primary line of business.

19) JBG POWER COMPANY LTD, a solar power development company managed and solely owned by Yulia Lezhen.

20) JBG Energy K.K. – a company registered in Japan, that is understood to be controlled by Dmitry Glukhov via his spouse and trustee, Yulia Lezhen.

21) MOSSBLOWN LIMITED, a Cyprus-registered company that owned a number of energy production companies in Russia which were reported by the media to have been controlled by Dmitry Glukhov;

22) VALUEST INVESTMENTS LIMITED (**"Valuest"**), a now dissolved shareholder of the holding company OOO WOSTEC, which is directly owned by Dmitry Glukhov and reported by the media to have been controlled by him;

23) JARRET OVERSEAS LTD (**"Jarret"**), a previous owner of Valuest and of one of Valuest's subsidiary that is now wholly owned by Dmitry Glukhov;

24) TARBOLTON HOLDINGS LIMITED, a Cyprus-registered company established by Jarret;

25) MULLEDMONT SOLAR LTD, an Irish company in which Yulia Lezhen is a director, and which is the subsidiary of Photovolt Development Partners GmbH, a company managed by Yulia Lezhen;

26) TERASOL HOLDING B.V., a company in which Yulia Lezhen is a director;

9

27) BLUESOL ENERGY B.V., a company owned by Cransseta and in which Yulia Lezhen is a director;

28) GREEN ACADEMY ENERGY BV, a company owned by Cransseta and in which Yulia Lezhen is a director;

29) BRAINY SOLUTIONS PTY LTD, an Australian company co-owned (50%) by Beneficial Owner Pavel Entin;

30) UNIROCK PARTNERS PTY LTD ("**Unirock**"), a company established in 2018 by Tamara Entina and John Alexander Freame, and solely owned by Pavel Entin since the termination of his bankruptcy. Pavel Entin is referred to in the public domain as the founder of this company;

31) UNIROCK PARTNERS PTE. LTD (formerly known as LAKESHORE INTERNATIONAL TECHNOLOGIES PTE. LTD) – a Singaporean company that registered and managed the website for Pavel Entin's current business in Australia (Unirock). Its former name contained 'LAKESHORE', which hints at an affiliation with the Lakeshore group of companies beneficially owned by Bogdan Solodukha, Pavel Entin, and Nataliya Solodkova;

32) N2O CAPITAL PTY LTD, a subsidiary of UNIROCK PARTNERS PTE. LTD, that is wholly owned by Pavel Entin;

33) UNITED HELICOPTERS INTERNATIONAL GROUP LIMITED, a Hong Kong registered company in which Pavel Entin is a director. According to Applicant's investigation, Pavel Entin and his spouse may have been beneficial owners of, and earned salaries from, the company, including during Pavel Entin's personal bankruptcy proceedings;

34) ASTROBELO LIMITED, a company that Applicant believes to be beneficially owned by Bogdan Solodukha, including during his personal bankruptcy proceedings;

35) MASSONYX LTD, a company that Applicant believes to be beneficially owned by Bogdan Solodukha, including during his personal bankruptcy proceedings; but that is nominee-held and managed by Andrei Kazakov;

36) LAKESHORE INTERNATIONAL MANAGEMENT INC (AG), an indirect owner of the Debtor. According to available documents and publicly available sources, the share capital of this company was distributed among Pavel Entin (47,5%), Bogdan Solodukha (47,5%), and Nataliya Solodkova (5%). Currently, the company is managed by Christoph Portmann, who continues to be a partner of Pavel Entin in his Australian business Unirock;

37) LAKESHORE INTERNATIONAL TRADE PTY LTD, a Singaporean company that was co-owned (70%) by Tamara Entina, Pavel Entin's spouse, and in which Pavel Entin was a director;

38) LAKESHORE INTERNATIONAL BUYOUT FUND, a fund registered in the Cayman Islands), which was an indirect owner of Debtor. According to available documents, 99% of the fund's shares were held by Creative Capital Unit Trust which was owned by Bogdan Solodukha, Pavel Entin and Nataliya Solodkova;

39) Lakeshore International Special Opportunity Fund, a fund registered in the Cayman Islands as part of the Lakeshore group of companies owned by Bogdan Solodukha, Pavel Entin and Nataliya Solodkova;

40) Lakeshore International Diamond Fund, a fund registered in the Cayman Islands as part of the Lakeshore group of companies owned by Bogdan Solodukha, Pavel Entin and Nataliya Solodkova;

41) LAKESHORE INTERNATIONAL AVIATION LIMITED (formerly known as LAKESHORE INTERNATIONAL INVEST LIMITED), a company part of the Lakeshore group of companies owned by Bogdan Solodukha, Pavel Entin and Nataliya Solodkova and of which Pavel Entin was a director;

42) International Holding PTE LTD (former name: Lakeshore International Group PTE LTD), a shareholder of LAKESHORE INTERNATIONAL AVIATION LIMITED, which was directed by Pavel Entin in 2017. The company is managed by Pavel Entin's employee, Denis Romashov, and owned by a nominee shareholder, Changi Nomenee Services PTE LTD (Singapore). The company is a part of the Lakeshore group of companies owned by Bogdan Solodukha, Pavel Entin, and Nataliya Solodkova;

43) KREBS TRADING LIMITED – a company fully owned by nominee shareholders acting in the interests of Bogdan Solodukha, Pavel Entinm and Nataliya Solodkova. Since 2015, Pavel Entin has been the director of the company, while it also served as a loan guarantor for Debtor;

44) BACLIFF INVESTMENTS LIMITED – a company wholly owned by Lakeshore International Buyout Fund (Cayman Islands), which is beneficially owned by Bogdan Solodukha, Pavel Entin, and Nataliya Solodkova. The company owned shares in and guaranteed loans for the Debtor. Since 2015, Pavel Entin has been the director of the company;

45) SUNTON LIMITED – a company wholly owned by Lakeshore International Buyout Fund, which is beneficially owned by Bogdan Solodukha, Pavel Entin and Nataliya Solodkova The company guaranteed loans for the Debtor. Since 2015, Pavel Entin has been the director of the company;

46) CREATIVE CAPITAL UNIT TRUST – a Singapore-registered trust established in 2008 by Pavel Entin (47.5% of share capital), Bogdan Solodukha (47.5% of share capital), and Nataliya Solodkova (5% share capital), and managed by ASIACITY TRUST SINGAPORE PTE. LTD, an asset management company beneficially owned by the Beneficial Owners. In 2008, the trust was an indirect owner of Debtor, and since then has been a holder of a number of companies beneficially owned by the Beneficial Owners. The trust invested, directly and indirectly, USD 95 million in the Cayman-based LAKESHORE INTERNATIONAL BUYOUT FUND, an indirect owner of Debtor;

47) PIRENA MANAGEMENT LIMITED – a Cyprus-registered company held by CREATIVE CAPITAL UNIT TRUST, which is beneficially owned by the Beneficial Owners. The company's accounts were actively used for money transfers among companies controlled by the Beneficial Owners;

48) VENATINO TRADING LIMITED – a Cyprus-registered company part of the Lakeshore group of companies owned by the Beneficial Owners. Pavel Entin is a beneficial owner of the company, but it is currently owned and managed by a nominee shareholder and director;

49) GALIANTRA LIMITED – a Cyprus company owned by nominee shareholders for the benefits of the Beneficial Owners. The company was actively used to transfer money between companies managed by the Beneficial Owners;

50) LAKOTA HOLDINGS LIMITED – a Cyprus company owned by CREATIVE CAPITAL UNIT TRUST. Pavel Entin is a director of the company;

51) AESONIA LIMITED – a Cyprus company owned by CREATIVE CAPITAL UNIT TRUST. The company was a large investor in the LAKESHORE INTERNATIONAL BUYOUT FUND.

52) ANTEVINA HOLDINGS LIMITED – a Cyprus company 80% co-owned by CREATIVE CAPITAL UNIT TRUST. In 2011, the company was an owner of OAO Segezhgranit, a Russian company that was a Lakeshore group project and of which Bogdan Solodukha and Nataliya Solodkova were directors;

53) CARRIER DESIGN LTD – a company registered in the British Virgin Islands for the benefit of Nataliya Solodkova. The Beneficial Owners were issued powers of attorney to act on behalf of the company. The company was actively used to transfer money between companies managed by the Beneficial Owners;

54) ANGARA INTERNATIONAL PTE. LTD. – a Singapore company owned by CREATIVE CAPITAL UNIT TRUST, which is beneficially owned by the Beneficial Owners. Pavel Entin served as the company's director;

14

55) POLARSTAR RESEARCH AND DEVELOPMENT COMPANY PTE. LTD.
    – a Singapore company 80% owned by CREATIVE CAPITAL UNIT
    TRUST;

56) PORTGATE MANAGEMENT LTD – a company registered in Seychelles,
    that was a large investor in LAKESHORE INTERNATIONAL BUYOUT
    FUND. The company transferred money to an advisory firm that facilitated a
    cessation deal for Debtor in 2014 on behalf of SUNTON LIMITED.

## II.   THE FOREIGN PROCEEDINGS AND FOREIGN TRIBUNAL

### A.  Pending Proceedings

27.     According to Russian insolvency legislation, so-called controlling persons bear
subsidiary liability[7] for the debts of a company that is insolvent. Subsidiary liability is applied if
complete satisfaction of creditors' claims is impossible due to the company's controlling persons'
actions or omissions. A controlling person is a person that has been in a position to give
mandatory instructions to the company, or otherwise determine its actions (e.g. CEOs, CFOs,
shareholders, members of the board, etc.). The subsidiary liability is equal to the total amount of
unsatisfied creditors' claims.

28.     Accordingly, Applicant has initiated subsidiary liability claims against the former
CEOs and Beneficial Owners of the Debtor, before the Court of Zabaykalsky Region (the
"Pending Proceedings").

---

[7] Subsidiary liability is special type of civil liability, which, as a rule, is incurred by a third party in case of default or
partial default by the principal debtor. According to Russian civil law, subsidiary liability is the supplementary to the
liability of the principal debtor. It is designed to supplement the debtor's liability by strengthening the protection of
the interests of creditors.

29.     Based on Applicant's investigations, Applicant intends to show the Court of Zabaykalsky Region in the Pending Proceedings that the Debtor's former CEOs and beneficial owners took actions aimed to syphon the Debtor's funds, causing the bankruptcy of the Debtor.

### B. Contemplated Proceedings

30.     Russian bankruptcy legislation states that a debtor must provide a court, trustee and creditors with extensive and accurate information about his or her assets. According to Article 213.28 (4) of the Federal law No 127-FZ dd October 26, 2002 "On insolvency (bankruptcy)" ("**Bankruptcy Law**"), if the debtor fails to provide the necessary information or provides unreliable information to the court regarding his bankruptcy estate, has concealed or intentionally destroyed his or her property, or defrauded creditors, the court shall not release the debtor from his or her obligations to the creditors.

31.     If a debtor-individual was released from the debts and the bankruptcy proceedings against the debtor were terminated, a creditor has a right to ask the court the reinstate terminated bankruptcy proceedings in cases where the debtor-individual concealed assets or illegally transferred them to third parties. The creditor may move the bankruptcy court for such a reinstatement, and the creditor has the opportunity to present evidence why the bankruptcy proceedings should be reinstated and the concealed assets liquidated. Should the creditor show the bankruptcy court that the debtor has intentionally concealed or misappropriated his assets, the court will reverse its previous ruling and shall not release the debtor from his obligation to pay the debt. In this case, the creditors' claims against the debtor shall be restored in the amount that was outstanding at the time the court terminated the bankruptcy proceedings (Article 213.29 of the Bankruptcy law).

32.     As mentioned above, the Guarantors went through personal bankruptcy proceedings and were eventually released from the Debt in accordance with Russian law. However, Applicant's investigation has led Applicant to reasonably believe that the Guarantors hid their assets in foreign jurisdictions by virtue of using various offshore corporate structures and nominees, in fraud of Applicant's rights and in violation of their duties under Russian bankruptcy law.

33.     Once Applicant obtains evidence confirming that certain assets of the Guarantors have been fraudulently concealed, assigned, or misappropriated, Applicant will move the Court of Moscow City and the Court of Kaluga Region to reinstate the bankruptcy proceedings against them, and include the Debt as in their creditors' registers because the Guarantors have acted in bad faith under Russian law and should not have been released from payment of the Debt (the "**Contemplated Proceedings**").

34.     Accordingly, Applicant's claims in the Pending and Contemplated Proceedings are claims sounding in fraud, in that Applicant intends to show the Russian courts that the Beneficial Owners and Guarantors have intentionally concealed, dissipated, misappropriated, or assigned the Debtor's and/or their personal assets, in order to defraud the Applicant and avoid repayment of the Debt (the "**Claims**").

### III.     NATURE OF THE DISCOVERY SOUGHT

35.     Consistent with the exercise the above-mentioned rights under Russian Bankruptcy Law, Applicant is allowed to and intends to introduce the evidence and records it seeks to obtain under 28 U.S.C. § 1782 (the "**Application**") in the Pending and Contemplated Proceedings. The main purposes of the Application is to (1) present the real picture of the

Beneficial Owners' assets to the Russian courts, (2) identify the Debtor's and Beneficial Owners' concealed, assigned, or misappropriated assets in order to show the Russian courts that the Debtor and Beneficial Owners should not have been relieved from their obligations under Russian Bankruptcy Law; (3) provide the Court of Zabaykalsky Region with evidence that the Beneficial Owners have syphoned the Debtor's assets in breach of the Credit Facilities or caused the Debtor to misuse the funds lent by the Bank under the Credit Facilities and therefore should be held responsible for the payment of the Debt; and (4) ultimately recover the concealed or illegally transferred assets for payment of the Debt.

36.    Accordingly, Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain relevant and probative documentary evidence from: Citibank, N.A.; The Bank of New York Mellon; Société Générale, New York Branch; HSBC Bank USA, N.A.; BNP Paribas USA; JPMorgan Chase Bank, N.A.; Barclays Bank PLC; Deutsche Bank Trust Co. Americas; The Bank of Nova Scotia, New York Agency; UBS AG; Bank of America, N.A.; Standard Chartered Bank US; Commerzbank AG, New York Branch; and The Clearing House Payments Company, LLC (hereinafter collectively the "**Respondents**"), for use in the Pending and Contemplated Proceedings before the courts of Russia. The Respondents are commonly known to act as correspondent, intermediary, or otherwise clearing house banks for wire transfers passing from domestic banks to international banks, and vice versa.

37.    Applicant seeks to obtain meaningful information from the Respondents located in this District that are in the business of processing wire transfers in New York City, and will have processed wire transfers relevant and probative to advance Applicant's Claims that the Beneficial Owners and Guarantors have intentionally concealed, dissipated, misappropriated, or

assigned the the Debtor's and/or their personal assets, in order to defraud the Applicant and avoid repayment of the Debt. Specifically, the Applicant seeks discovery to obtain evidence of intermediary bank transfers and documents relating thereto to prove that the Beneficial Owners have concealed assets of the Debtor and/or their personal assets in order to defraud creditors. The ultimate goal is to (1) present the real picture of the Beneficial Owners' assets to the Russian courts, (2) identify the Debtor's and Beneficial Owners' concealed, assigned, or misappropriated assets in order to show the Russian courts that the Debtor and Beneficial Owners should not have been relieved from their obligations under Russian Bankruptcy Law; (3) provide the Court of Zabaykalsky Region with evidence that the Beneficial Owners have syphoned the Debtor's assets in breach of the Credit Facilities or caused the Debtor to misuse the funds lent by the Bank under the Credit Facilities and therefore should be held responsible for the payment of the Debt; and (4) ultimately recover the concealed or illegally transferred assets for payment of the Debt in accordance with the Russian Bankruptcy Law and applicable cross-border laws.

38.     The Applicant seeks evidence maintained by the Respondents in New York City regarding relevant wire transactions and documents relating thereto, between the Beneficial Owners, the Debtor, and the Related Persons (together the "**Discovery Targets**"). Specifically, the discovery sought from the Respondents is evidence of wire transfers routed through the Respondents in New York City revealing the Debtor's and the Beneficial Owners' movement of funds, and the identity of other entities or individuals that may have engaged in suspicious transactions with the Debtor and the Beneficial Owners and may have assisted the Beneficial Owners in dissipating and concealing their and the Debtor's assets. Accordingly, the evidence sought is critical to satisfy Applicant's Claims.

19

39.     I am advised by New York counsel that the Respondents, from whom discovery is sought, reside or are found in the Southern District of New York, within the meaning of 28 U.S.C. §1782.

40.     The Respondents are not expected to become a party to the Current and Pending Proceedings, and as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. Indeed, absent the instant Application, the evidence would almost certainly remain outside the reach of the Russian courts.

41.     Further, there is no indication that the Russian courts would not be receptive to the documentary evidence sought through the instant Application. Such evidence is likely admissible in the Pending and Contemplated Proceedings. The Application does not circumvent any proof-gathering restriction under the laws of the Russian Federation.

42.     The discovery sought to be served on Respondents is not intrusive or unduly burdensome because it is of limited scope. The Applicant seeks limited records relating to wire transactions for which the Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the Respondents otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning April 1, 2015 to the present. The documentary evidence sought here is of the type that Respondents regularly and easily retrieve and produce as third parties or actual parties in litigation.

IV.     **APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE TO MR. GLUKHOV, GUARANTORS, THE DISCOVERY SUBJECTS AND THE RESPONDENTS**

43.     The Applicant respectfully requests that (1) The Applicant not be required to serve the Discovery Targets or the Respondents with this Application and, (2) should the court grant this Application, that the Applicant not be required to serve the Discovery Targets with the order granting the Application.

44.     As explained above, the discovery sought from the Respondents will assist Applicant in revealing the Debtor's and/or the Beneficial Owners' fraudulent activities, in order to 1) present the real picture of the Beneficial Owners' assets to the Russian courts, (2) identify the Debtor's and Beneficial Owners' concealed, assigned, or misappropriated assets in order to show the Russian courts that the Debtor and Beneficial Owners should not have been relieved from their obligations under Russian Bankruptcy Law; (3) provide the Court of Zabaykalsky Region with evidence that the Beneficial Owners have syphoned the Debtor's assets in breach of the Credit Facilities or caused the Debtor to misuse the funds lent by the Bank under the Credit Facilities and therefore should be held responsible for the payment of the Debt and that any proceeds recovered from the suspicious transactions should be distributed among their creditors in accordance with the Russian Bankruptcy Law; and (4) ultimately recover the concealed or illegally transferred assets for payment of the Debt. This information and evidence is therefore crucial to advance Applicant's Claims.

45.     Based on the aboved-mentioned facts, the Applicant has a good faith reason to believe that the Beneficial Owners have used a sophisticated web of entities to conceal their assets, and failed to disclose to the Russian courts the real scope of their ownership of assets that should have been used to pay the Debt in violation of Russian law.

46.     The information sought through this *ex parte* Application is the only practical and efficient way Applicant can obtain the discovery sought. In light of the above, notice of the

Application and of the order granting the Application (should the Court grant the Application) would prejudice Applicant in that it would provide the Beneficial Owners and other fraudsters the opportunity to potentially further assign or conceal the assets that Applicant intends to show were misappropriated, and would frustrate and delay Applicant's full understanding of the fraudulent transfers of assets and, ultimately, Applicant's collection of said assets in repayment of the Debt or to otherwise recover the damages it has suffered.

47.    Conversely, there would be no prejudice to the party against whom the discovery is likely to be used — namely the Beneficial Owners — as they would be permitted to contest any evidence submitted by Applicant to the Russian state commercial courts, during the Pending and Contemplated Proceedings irrespective of how such evidence was obtained.

## V.    CONCLUSION

48.    In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met:

i.    The Respondents reside and/or are found in this District;

ii.    Applicant is an "interested person" within the meaning of the statute; and

iii.    Applicant seeks to obtain documents and testimony for use in a foreign proceeding.

49.    To my knowledge no previous application for this relief has been made in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___1___ day of ___April___, 2022, in ___Moscow___.

By: _____